# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br>Andrew Josiah Segura<br><br>*Defendant(s)* | ) ) ) ) ) ) )   Case No. 25mj323 |

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO
FEB 28 2025
MITCHELL R. ELFERS
CLERK OF COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 19, 2025__ in the county of __Dona Ana__ in the
_____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assault, resistance, opposition, and intimidation of an officer or employee of the United States involving physical contact |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Ryan Beck, HSI Special Agent
*Printed name and title*

Telephonically sworn and electronically signed.

Date: February 28, 2025

_____
*Judge's signature*

City and state:      Las Cruces, New Mexico          Gregory B. Wormuth, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ryan Beck, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with Homeland Security Investigations and have been since September 2020. I have gained experience through training and everyday work relating to conducting these types of investigations. Prior to becoming a Special Agent, I earned a Bachelor's degree in Criminal Justice from New Mexico State University. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge, Las Cruces, New Mexico. Prior to my current position, I was a police officer certified through the state of New Mexico from June 2012 through September 2020. I am currently assigned to investigate violations of federal law, including assault on a federal officer.

2. The information contained herein is based upon my investigation as well as information supplied to me by other duly sworn law enforcement officers, federal employees, and witnesses and does not contain all information known to me, only facts for consideration of probable cause. I make this affidavit in support of a criminal complaint that there is probable cause to find that Andrew Josiah Segura violated 18 U.S.C. § 111(a)(l), Assault, resistance, opposition, and intimidation of an officer or employee of the United States involving physical contact.

### Relevant Statutes

3. Title 18 U.S.C. § 111(a)(l) makes it a crime for someone to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of this title, involving physical contact, while engaged in or on account of the performance of official duties.

A Customs and Border Protection (CBP) Mission Support Specialist and a CBP Mission Support Assistant both constitute officers or employees of the United States pursuant to 18 U.S.C § 1114.

## Details of the Investigation

4.  On February 19, 2025, Homeland Security Investigations (HSI) Special Agents learned from United States Customs and Border Protection (CBP) that earlier that day, two CBP employees had been verbally threatened by a male subject and that one of the employees had been physically assaulted by the same subject while they were engaged in the performance of official duties in Santa Teresa, New Mexico. CBP also advised there was another incident involving the same subject threatening a United States Border Patrol (USBP) agent in Santa Teresa on February 11, 2025.

5.  HSI Special Agents learned from the Federal Bureau of Investigations (FBI) and USBP that on February 11, 2025, a USBP agent stopped for lunch at the Love's Travel Stop, located at 2401 Airport Road in Santa Teresa when he was approached by a male subject who began to verbally threaten him. The subject told the agent that he was a "traitor" and further said, "I will smack the shit out of you." Following the threats, the USBP agent observed the subject depart in a gray Honda Accord bearing New Mexico license plate "402TSX." Record checks revealed that the license plate was registered to an older couple residing at 111 Santo Ysidro Road in Santa Teresa. Further record checks showed multiple residents living at the address. When photographs of the residents were shown to the USBP agent, he identified Andrew Josiah Segura as the subject who verbally threatened him.

6.  On February 20, 2025, HSI Special Agents interviewed Adam Chavez and Marco Pena, both of whom were identified as being full-time employees of CBP. Chavez advised his job title was "Mission Support Specialist" and Pena advised his job title was "Mission Support

Assistant." Both subjects were wearing CBP-issued uniforms consisting of collared shirts and tan tactical-style pants. The collared shirts featured the Department of Homeland Security (DHS) seal embroidered on the left chest, white lettering reading "U.S. CUSTOMS AND BORDER PROTECTION" embroidered above the seal, and their last names embroidered in white lettering on the right chest. Both subjects stated they were wearing these same uniforms on February 19, 2025 when they traveled to the United States Post Office located at 5290 McNutt Road, Suite 211 in Santa Teresa.

7. Chavez and Pena advised that they drove a marked CBP vehicle with emergency light bar and clearly visible DHS and CBP decals to the post office to check for any inbound mail or packages that had been received for the CBP Santa Teresa Port of Entry. They stated that checking for incoming mail was part of their official CBP duties.

8. Upon arriving at the post office, Chavez and Pena parked the CBP vehicle in the parking spaces south of the post office. As Chavez exited the vehicle, a gray Honda Accord approached from his right and stopped in the lane of travel in front of, and perpendicular to the CBP vehicle as if to block it. The Honda's male driver, later identified as Segura, began to yell at Chavez. Chavez did not respond but instead got back into the CBP vehicle as to avoid conflict with Segura.

9. After waiting until Segura left the immediate area, Chavez exited the CBP vehicle and entered the post office. Moments later, Segura returned to the area and walked into the post office, where he began to yell at Chavez and call him a "traitor." Segura further walked up to Chavez and stood right next to him, looking down at the paperwork Chavez was filling out. Segura then said, "I saw your name now, Adam Chavez. You better watch your back."

10. Per Chavez, Segura's close proximity to him and verbal threats made Chavez fear that Segura might attempt to strike him. Chavez responded by telling Segura to leave the post office.

11. After seeing Segura enter the post office after Chavez, Pena advised that he was worried for Chavez's safety, so Pena also entered the post office. As Pena entered the building through one door, Segura exited through another door. Segura then proceeded to walk around the building and to the door that Pena had just entered, at which point Segura approached Pena and began yelling and demanding Pena to provide his name to Segura. After Pena refused, Segura placed his open hands on Pena's chest and pushed him backwards, initiating a physical confrontation. Pena responded by punching Segura and the two began to wrestle with each other. At one point, Segura grabbed Pena's arms, leaving significant bruising to Pena's right bicep.

12. After post office employees yelled at Segura to leave, he exited the building and returned to his vehicle. He proceeded to drive around the post office several times before parking and walking back towards the post office. While walking towards the post office, witnesses observed that Segura had his hand in the front pocket of his sweatshirt, which appeared to be weighed down with something heavy. After hearing the sirens of responding police officers, Segura returned to his vehicle and departed the area.

13. Multiple witnesses to the incident were interviewed and stated that Segura's actions and hostility toward Chavez and Pena were unprovoked and appeared to be due to their employment, as Segura did not bother any other customers or employees in the post office. The witnesses also claimed that when Segura entered the post office the second time, Pena attempted to deescalate the situation by reaching out to shake Segura's hand as a gesture of peace, to which Segura responded by pushing Pena.

14. The witnesses further stated that Chavez and Pena were regular customers at the post office and that Segura did not enter the post office to conduct any business. Two of the witnesses stated that they feared for their safety when they saw Segura returning to the post office after the physical altercation because they believed he might have had a weapon in his sweatshirt pocket.

15. The witnesses stated that the gray Honda driven by Segura had a yellow New Mexico license plate beginning with either "204" or "402."

16. Chavez, Pena, and three witnesses independently identified Segura by his driver's license photo as being the subject who physically assaulted Pena.

17. Chavez, Pena, and the witnesses said they had never seen or met Segura before the incident.

18. I submit that probable cause exists to believe that Andrew Josiah Segura committed the crime of Assault, resistance, opposition, and intimidation of an officer or employee of the United States involving physical contact, in violation of 18 U.S.C. § 111(a)(1).

Respectfully submitted,

_____
Ryan Beck, Special Agent
Homeland Security Investigations

Subscribed and telephonically sworn before me on this 28th day of February 2025.

_____
THE HONORABLE GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE